634 F.2d 1222
 FIRST EMPIRE BANK-NEW YORK (by its successor-in-interest
Manufacturers & Traders Trust Co. of Buffalo, New York, a
New York banking corporation) and Societe Generale, a French
banking corporation, Plaintiffs-Appellants,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION and Federal Deposit
Insurance Corporation as Receiver of United States
National Bank, Defendants-Appellees.
 No. 79-3166.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 14, 1980.
Decided Dec. 30, 1980.
 
 Don A. Proudfoot, Jr., Los Angeles, Cal., Gary J. Greenberg, Stroock, Stroock & Lavan, New York City, for plaintiffs-appellants.
 Charles A. Legge, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before BROWNING, MERRILL and FLETCHER, Circuit Judges.
 MERRILL, Circuit Judge:
 
 
 1
 In an earlier appeal this court dealt with problems presented by the receivership of the United States National Bank of San Diego (USNB) and with actions taken by the Federal Deposit Insurance Corporation (FDIC), both in its corporate capacity as insurer and as receiver of USNB. First Empire Bank-New York v. Federal Deposit Insurance Corp., 572 F.2d 1361 (9th Cir. 1978). FDIC had entered into a purchase and assumption agreement with Crocker National Bank. Under that contract, Crocker had assumed certain obligations of USNB but had refused to assume certain other obligations in the form of standby letters of credit issued by the bank, unless FDIC, in its corporate capacity, guaranteed the obligations of the account party as an offsetting asset. FDIC refused to do this. We held that the purchase and assumption agreement amounted to a distribution to those whose claims were assumed by Crocker, and that since certain creditors were excluded from the distribution it was not ratable as required by the National Bank Act, 12 U.S.C. § 194. We remanded the case "with instructions that judgment be entered in favor of each appellant in the amount of the face value of each USNB letter of credit held by it, plus interest from the dates of maturity, less the amount of any USNB deposit held by it." First Empire Bank-New York v. Federal Deposit Insurance Corp., supra, 572 F.2d at 1372.
 
 
 2
 The district court has entered judgment for appellants pursuant to our remand. On this appeal appellants challenge in three respects the manner in which sums due them were computed by the district court.
 
 1. Interest Rate
 
 3
 The district court held that interest accruing after the date on which the obligations matured should be calculated at California's legal rate of interest: 7% per annum.[1] Appellants dispute this holding. They contend that interest should be calculated at the contract rate so that they can receive the full benefit of their bargain with USNB. In support of this contention they point to the emphasis we placed in our earlier opinion on the need for equality of treatment between creditors if dividends are to be "ratable." They conclude that they are entitled to the same treatment as those creditors who received the benefit of their bargain when their claims were assumed, and promptly paid, by Crocker.
 
 
 4
 We must reject appellants' contention. The equality of treatment we demanded in our earlier opinion pertained to the sharing of the distribution of dividends by all holding claims against the closed bank.
 
 
 5
 In our earlier opinion we dealt with the question of interest in response to FDIC's contention that interest should not form a part of the creditors' claims. We noted that while interest, after insolvency of the bank, cannot be included in the claim against the bank, it is proper to allow interest upon an erroneously disallowed claim from the date a ratable amount was paid to other creditors. We quoted from the Supreme Court in Ticonic National Bank v. Sprague, 303 U.S. 406, 411, 58 S.Ct. 612, 614, 82 L.Ed. 926 (1938):
 
 
 6
 "(A) creditor whose claim has been erroneously disallowed is entitled on its allowance to interest on his dividends from the time a ratable amount was paid other creditors."
 
 
 7
 Accordingly, on our remand we directed that interest from the date of maturity be paid, not because it was bargained for, but in the nature of damages for failure to include the creditor in distribution of a dividend.
 
 
 8
 However, the benefit-of-the-bargain rule, although appropriate in other circumstances, can have no application in the event of the failure of a national bank. With different contract rates applying to different claims, the benefit-of-the-bargain rule would result in a decidedly unratable distribution as between disfavored creditors.
 
 
 9
 Thus, in cases dealing with bank failures under the National Bank Act, it is recognized that interest upon a claim erroneously disallowed by the receiver should be calculated at the applicable legal rate. Douglass v. Thurston County, 86 F.2d 899 (9th Cir. 1936); Anderson v. General American Life Insurance Co., 141 F.2d 898 (6th Cir. 1944). In the latter case the court stated at page 909:
 
 
 10
 "By unquestioned authority the appellee General American Life Insurance Company is entitled to recover from the appellant Receiver legal interest at the rate of 6% per annum upon the 67% dividend and upon the 10% dividend, respectively, on its established claim of $503,541.66, from the dates when like dividends were respectively paid to other creditors up to the date when corresponding dividends shall be paid to the appellee."
 
 
 11
 And in Elliott v. First Inland National Bank of Pendleton, Or., 32 F.Supp. 839 (D.Or.1940), the court stated:
 
 
 12
 "The authorities support the proposition contended for by the Receiver-that interest on the time and savings deposits should be computed to the date of closing at the contract rate * * * thereafter the total should bear interest at the same rate (the local statutory rate on judgments) as the demand deposits. Ratability in distribution is thus attained. The question is solely one of interpretation of the National Banking Code."
 
 
 13
 Id. We agree with the Oregon court.
 
 
 14
 We conclude that the district court correctly allowed post-maturity interest at the legal rate rather than at the contract rate.
 
 2. Accounting Year
 
 15
 Appellants' letters of credit specified that interest should be computed not only at a specified rate but on the basis of a 360-day accounting year. In calculating the pre-maturity interest, the district court used this basis together with the specified contract rate. However, the court directed that post-maturity interest should be computed on a 365-day accounting year. Appellants contend that post-maturity interest as well as pre-maturity interest should be computed on the 360-day basis. We cannot agree.
 
 
 16
 The use of the 360-day basis was an advantage to the lender, secured by special provision of the letters of credit. Absent such a provision, interest would ordinarily be computed on the basis of the physical fact that a "year," for the purposes of interest or otherwise, is an actual year of 365 days. Appellants' contention here suffers from the same weakness as did their contention respecting interest rate. For the reasons already given, contractual provisions in this case as to interest cannot control after bank closure. The district court was not in error in holding that post-maturity interest should be computed on the basis of a 365-day accounting year.
 
 3. Crediting of Offsets
 
 17
 Appellants held deposits of USNB which they were entitled to retain as offsets against the sums due them from USNB. The district court held that in computing interest upon the sums due to appellants, the USNB deposits should be offset (and the claims against USNB reduced accordingly) as of the date of bank closure, October 18, 1973. Appellants contend that the offsets should be credited as of the date appellants ultimately received payment following our remand. We cannot agree. This would, in effect, allow appellants interest for the period from bank closure to payment of their claims on the very deposits of USNB which they had ordinary use of throughout this time.
 
 
 18
 Where the debt of a closed bank is offset against that bank's deposit in another bank, only the balance of deposit over setoff is considered an asset of the receivership. Scott v. Armstrong, 146 U.S. 499, 510, 13 S.Ct. 148, 151, 36 L.Ed. 1059 (1892); Federal Deposit Insurance Corp. v. Mademoiselle of California, 379 F.2d 660, 663 (9th Cir. 1967). The rights of the parties become fixed as of the date of insolvency. Scott v. Armstrong, supra, 146 U.S. at 510, 13 S.Ct. at 151.
 
 
 19
 As of that date, then, appellants' rights to the USNB deposits became fixed, and the receiver took no part of those deposits as assets. Accordingly, as of that date the debt of USNB on its letters of credit was reduced by the amount of its deposits.
 
 
 20
 We conclude that the district court correctly ruled that the deposits should be offset as of October 18, 1973.
 
 
 21
 Judgment affirmed.
 
 FLETCHER, Circuit Judge, dissenting:
 
 22
 I respectfully dissent. The central problem presented by this appeal is the task of determining what is needed to put disfavored creditors on an equal footing with favored creditors. The favored creditors were timely paid and were able to reinvest at market rates higher than the legal rate. The disfavored parties were denied the opportunity for investment at the market rate. The appellants have been disadvantaged by the use of the legal rate. A rate of return approximating the market rate should have been used to achieve equality.
 
 
 23
 The majority argues that giving appellants the benefit of their bargain would result in unratable distribution among disfavored creditors, because different contract rates apply to different claims. But a decision giving disfavored creditors the approximate market rate would not be based on contract, but rather on the equitable principle of according disfavored creditors equal treatment with favored creditors. Thus, a decision for appellants would not entail awarding the specific contract rates specified in each instrument, but rather would involve determining the market rate during the period of wrongful withholding. The rate, once determined, would be applicable to all wrongfully withheld funds.
 
 
 24
 I would remand for a determination of the rate of return that would have been earned had the appellants' funds not been wrongfully withheld and for award of interest based thereon.
 
 
 
 [1]
 The district court held that pre-maturity interest at the contract rate properly formed a part of the creditors' claims