INTERFIRST BANK ABILENE,
N.A., Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE
CORP., Receiver of Ranchlander
National Bank, Defendant.

Civ. A. No. A–83–CA–197.

United States District Court,
W.D. Texas,
Austin Division.

Aug. 24, 1984.

A. Erin Dwyer, Dallas, Tex., Robert H. Alvis, Wagstaff, Harrell, Alvis, Stubbeman, Seamster & Longacre, Abilene, Tex., J. Rowland Cook, Johnson & Swanson, Austin, Tex., for plaintiff.

Michael Sharp, Austin, Tex., for defendant.

## MEMORANDUM OPINION

JACK ROBERTS, Senior District Judge.

This case arises out of the insolvency and receivership of the Ranchlander National Bank in Melvin, Texas. It is before the Court for trial on the joint stipulations of fact of the parties and on the motion of the defendant, the Federal Deposit Insurance Corporation, for partial summary judgment. Pursuant to Federal Civil Procedure Rule 54(b), the Court denies the FDIC's motion and enters final judgment for the plaintiff, InterFirst Bank Abilene, on all claims for relief except its request for attorney's fees and interest on sums recovered.

InterFirst's claim arises out of four loan participations it purchased from Ranchlander. Prior to its closing, Ranchlander maintained a correspondent account and a federal funds account at InterFirst. After learning of Ranchlander's insolvency, InterFirst transferred all funds from the federal funds account to the noninterest-bearing correspondent account and then set off the correspondent account against the participated loans. InterFirst has refused the FDIC's request to pay to it the Ranchlander funds. InterFirst seeks a declaratory judgment that its setoff of the Ranchlander account against the participated loans was proper and that it has no resulting liability to the FDIC. In addition, InterFirst seeks to collect its share of the proceeds the FDIC has recovered against two of the participated loans, interest on the funds recovered, and attorney's fees for bringing this action.

The FDIC contends that the loan participations were contingent claims and were not debts of Ranchlander at the time of its insolvency or when it was placed in receivership. For these reasons, the FDIC contends that the claims were not provable in the receivership. It counterclaims against InterFirst for the amount in the Ranchlander correspondent account plus interest at a six percent rate, the amount in the federal funds account plus interest at the federal funds rate, and attorney's fees.

## FINDINGS OF FACT

The parties have stipulated the facts. InterFirst is a national bank operating in Abilene, Texas. Until November 19, 1982, when it was closed, Ranchlander was a national bank operating in Melvin, Texas. It was forced to close upon the discovery that Orrin Shaid, the *de facto* chief executive officer of the bank, was using his control of the bank to carry out a fraudulent scheme. Shaid had acquired a controlling interest in Ranchlander in May 1981, with the stock held in the name of Lynn Caruth Maree. He controlled the operations of the bank through Jean Moon, the president of Ranchlander.

Acting through Shaid and Moon, Ranchlander sold to InterFirst the four loan participations that are the basis of this action. In May 1982, InterFirst bought a $10,000 participation in a $10,500 loan from Ranchlander to Shaid. In July 1982 InterFirst bought two participations: a $45,000 participation in a $86,000 loan purportedly made by Ranchlander to Henry E. McClanahan, and a $15,000 participation in a $30,000 loan made by Ranchlander to Joyce Webb. Finally, in October 1982, InterFirst purchased a $42,000 participation in a $43,994.71 loan purportedly made by Ranchlander to Central Texas Factors (Cen-Tex). InterFirst paid for these participations by depositing funds into the correspondent

checking account that Ranchlander maintained at InterFirst.

Ranchlander delivered to InterFirst certificates of participation executed by Jean Moon. The certificates provide that (1) Ranchlander would account for all payments received on the loans and disburse to InterFirst its portion of the funds, and (2) Ranchlander would not be liable to InterFirst for losses or expenses caused by the loans *unless* the losses or expenses were due to Ranchlander's fraud or gross negligence.

Upon maturity of the Webb loan in January 1983, the FDIC collected substantially all the principal and interest due. InterFirst's share of the collections is $15,824.51. Upon maturity of the Shaid loan in June 1983, the FDIC collected $2,500, of which InterFirst's share is $1,416.19.

In purchasing the loan participations, InterFirst relied on several misrepresentations by Ranchlander and its officers. The signature of McClanahan was forged on the $86,000 note and the underlying security agreement, and Moon and Shaid falsified inspection reports relating to nonexistent collateral securing the McClanahan loan. Ranchlander misrepresented to InterFirst that Cen-Tex was creditworthy, that Ranchlander had perfected a security interest in Cen-Tex accounts receivable sufficient to secure the loan, and that Ranchlander would disburse to InterFirst its share of payments on the accounts receivable as they were received. Ranchlander instead credited the payments to a Cen-Tex account from which Shaid withdrew funds for his personal use.

Each of the foregoing misrepresentations was knowingly made by Shaid or Moon, acting on behalf of and with the authority of Ranchlander with an intent to deceive InterFirst and induce it to purchase the participations. Ranchlander therefore was grossly negligent and acted with fraudulent intent in making the McClanahan and Cen-Tex loans and selling participations in them to InterFirst.

On November 18, 1982, Ranchlander had a balance of $25,994.99 in its correspondent account at InterFirst. Also as of that date, InterFirst owed Ranchlander $35,000 that it had previously purchased as federal funds out of the correspondent account. On November 19, 1982, the FDIC notified InterFirst that Ranchlander was insolvent and that it was appointed receiver and instructed InterFirst not to accept any charges to Ranchlander's accounts. That same day, InterFirst transferred $35,008.99 (representing principal & interest) from its general ledger account to the Ranchlander correspondent account to repay the previously purchased federal funds. InterFirst thereafter paid no interest on Ranchlander funds deposited with it. Although the FDIC had not requested this transaction, there is no evidence that the FDIC at any time instructed InterFirst to sell federal funds on Ranchlander's account. Taking judicial notice of the common practice of banks to reverse federal funds transactions on a daily basis unless a provision is made for a longer-term transaction, the Court finds that the transfer did not violate the FDIC's instructions to InterFirst and that the funds were properly carried by InterFirst in a noninterest-bearing account.

On November 26, 1982, the FDIC requested InterFirst to remit to it $61,003.98, which represented the outstanding balance of the Ranchlander account. InterFirst refuses to pay the FDIC the money and has claimed a right to set off the funds in the account against its share of the McClanahan and Cen-Tex loans. It also asserts a right to its portion of the collection made by the FDIC on the Webb and Shaid loans. The FDIC has refused to pay InterFirst a share of the money collected on the loans until InterFirst remits the balance of the Ranchlander account.

## CONCLUSIONS OF LAW

The distribution of assets of an insolvent national bank by the FDIC is a matter of federal law:

Under the relevant provisions of the National Bank Act (12 U.S.C. §§ 191–200) and the Federal Deposit Insurance Act (12 U.S.C. §§ 1811–32) Congress has es-

tablished a complete system for the administration and liquidation of insolvent national banks for the benefit of creditors with the receiver acting as the administrative agent of the Comptroller of the Currency. The Acts constitute a complete plan for the establishment and government of national banks....

*FDIC v. Grella,* 553 F.2d 258, 261 (2d Cir. 1977) (citations omitted). In general, therefore, when the FDIC acts in its corporate capacity as receiver of a national bank, federal law applies. *FDIC v. Bank of America,* 701 F.2d 831 (9th Cir.1983). In particular, under 12 U.S.C. § 194, the allowance of claims against the assets of an insolvent national bank is a matter of federal law. *FDIC v. Mademoiselle of California,* 379 F.2d 660, 662 (9th Cir.1967).

■ The Court therefore rejects the contention of the FDIC that Texas Civil Procedure Rule 97(g) precludes InterFirst from setting off the Ranchlander account against its claim against Ranchlander. Rule 97(g) provides that a tort claim may not be set off against a contractual demand. According to the FDIC, InterFirst is attempting to set off a tort claim (the fraudulent participation interest) against a contractual demand (the Ranchlander correspondent account. Regardless of the merits of that characterization of InterFirst's claim, Texas law is not applicable.

The FDIC contends that InterFirst's claimed right of setoff violates the pro rata distribution requirements of the National Bank Act. *See* 12 U.S.C. §§ 91, 194. According to the FDIC, the setoff constitutes an impermissible preference of InterFirst over other Ranchlander creditors. The FDIC maintains that any claim of InterFirst based on the loan participations is not provable against the FDIC as receiver because, it asserts, the claims were contingent on the date of Ranchlander's insolvency and not a debt of Ranchlander. Since InterFirst lacks a provable claim against

the FDIC under this argument, it would not be entitled to set off the money in Ranchlander's correspondent account against the loan participations.

The Supreme Court long ago held that if a setoff is otherwise valid, it is not a preference in violation of the National Bank Act; only the balance of deposit over setoff is considered an asset of the receivership. *Scott v. Armstrong,* 146 U.S. 499, 510, 13 S.Ct. 148, 151, 36 L.Ed. 1059 (1892); *First Empire Bank v. FDIC,* 634 F.2d 1222, 1225 (9th Cir.1980) (*First Empire II*). In determining the validity of a setoff, the rights of the parties are fixed as of the date of insolvency. *Scott,* 146 U.S. at 510, 13 S.Ct. at 151; *First Empire II,* 634 F.2d at 1225. The issue before the Court is therefore whether InterFirst had a claim against Ranchlander on the date of insolvency that it could validly set off against Ranchlander's account.

■ The Ninth Circuit has discussed the law determining the provability of claims against the FDIC as receiver of a national bank. *FDIC v. United States National Bank,* 685 F.2d 270, 275–76 (9th Cir.1982); *First Empire Bank v. FDIC,* 572 F.2d 1361, 1367–69 (9th Cir.1978) (*First Empire I*). According to the rule of *First Empire I,* a claim is provable in the receivership if (1) it is in existence before insolvency and does not depend on any new contractual obligations arising later, (2) the liability on the claims is absolute and certain in amount when the suit was filed against the receiver, and (3) the claim against the receiver is made in a timely manner well before any distribution of the assets of the receivership other than a distribution through a purchase and assumption agreement. *First Empire I,* 572 F.2d at 1369.[1]

InterFirst has advanced two legal theories to support a claim provable against the FDIC as receiver for Ranchlander. First, InterFirst points to the clause in the certificates of participation that makes Ranchlan-

---

1. In the *United States National Bank* case, the Ninth Circuit held that the lending bank held a claim provable in receivership if it could show that it had been fraudulently induced to make a subordinated loan. In *First Empire I,* the court held that the creditor banks validly set off claims based on standby letters of credit.

der liable to InterFirst for any losses or expenses resulting from Ranchlander's fraud or gross negligence. Second, Inter-First maintains that it has the right to rescind the McClanahan and Cen-Tex participation agreements with Ranchlander as void from the outset because of fraud.

■ Under the equitable principles of *First Empire I* and *United States National Bank,* InterFirst can maintain provable claims against the FDIC based on both of its theories. The McClanahan and Cen-Tex transactions occurred before the insolvency, and the claims they give rise to do not depend on any new contractual obligations arising later. Since the facts showing fraud were stipulated by the parties for trial, the liability was absolute and certain in amount when the suit was filed. The setoff based on the rescission claim was timely made before the distribution of the assets of Ranchlander. Furthermore, under the terms of the participation agreement, Ranchlander is liable to InterFirst for all losses resulting from its fraud and gross negligence, which in this case implies that InterFirst has a claim against Ranchlander for the entire amount of its participation, regardless of whether any further collection is made against the McClanahan and Cen-Tex loans. The Court therefore concludes that InterFirst's claims based on the McClanahan and Cen-Tex loan participations are provable in face amount against the FDIC as receiver of Ranchlander. It follows that InterFirst validly set off the Ranchlander correspondent account against the balance due on the loans.

■ As noted above, the FDIC collected the entire amount due on the Webb loan and $2,500 of the amount due on the Shaid loan. From the facts stipulated by the parties, it is evident that as to InterFirst's share of the proceeds, the FDIC was acting as an agent for InterFirst under the participation agreement. The funds are therefore not an asset of the receivership, and the FDIC must pay them over to Inter-First.

■ Finally, InterFirst seeks attorney's fees and interest on all sums recovered. As noted above, federal law governs the allowance of claims against the receivership of an insolvent national bank. The allowance of interest on a claim against the receivership must therefore comply with the requirement of 12 U.S.C. § 194 that the assets of the insolvent bank be ratably distributed among the banks creditors: "[W]hile interest, after insolvency of the bank, cannot be included in the claim against the bank, it is proper to allow interest upon an erroneously disallowed claim from the date a ratable amount was paid to other creditors." *First Empire II,* 634 F.2d at 1224 (explaining *First Empire I,* 572 F.2d at 1372). It is the Court's understanding that no dividends have yet been paid to the creditors of Ranchlander. Accordingly, no interest is allowable on Inter-First's recovery.

The payment of attorney's fees would likewise constitute an impingement on the requirement that the assets be ratable distributed among creditors. *Fash v. First National Bank of Alva,* 89 F.2d 110 (10th Cir.1937). It is accordingly

**ORDERED, ADJUDGED,** and **DE-CREED** that the defendant's motion for partial summary judgment be, and hereby is, **DENIED** and that **JUDGMENT** be entered for the plaintiff declaring that the setoff of the Ranchlander account by the plaintiff was proper and that the plaintiff has no liability to the defendant as a result of the setoff and the application of the funds setoff against participated loans and that the plaintiff receive $15,824.51 as its share of the proceeds collected against the Webb loan and $1,416.19 as its share of the proceeds collected against the Shaid loan. Each party to bear its own costs.