The CHASE MANHATTAN BANK, N.A., a national banking association, Plaintiff,

v.

The FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver for Penn Square Bank, N.A., Defendant.

No. CIV 82–1074–R.

United States District Court, W.D. Oklahoma.

Jan. 5, 1983.

William D. Watts, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, Okl., Stephen J. Blauner, Milbank, Tweed, Hadley & McCloy, New York City, for plaintiff.

Joe E. Edwards, Edwards, Roberts & Winterstein, Oklahoma City, Okl., Albert J. Tumpson, F.D.I.C., Washington, D.C., Charles C. Baker, Gable & Gotwals, Tulsa, Okl., for defendant.

## ORDER

DAVID L. RUSSELL, District Judge.

The Plaintiff, Chase Manhattan Bank, N.A. ("Chase") has filed a Motion to Compel, pursuant to Rule 37 of the Federal Rules of Civil Procedure, for an order compelling Defendant, the Federal Deposit Insurance Corporation, in its capacity as Receiver for Penn Square Bank, N.A. (the "FDIC") to produce the documents requested by Plaintiff and answer the Plaintiff's first set of interrogatories to Defendant.

In conjunction with its response to Plaintiff's motion, Defendant filed a Motion to Dismiss and Alternative Motion for Summary Judgment. Plaintiff filed a brief in opposition to Defendant's motions and a reply to Defendant's brief in opposition to Plaintiff's Motion to Compel. A reply brief was submitted by Defendant in support of its motion to dismiss or motion for summary judgment.

On July 5, 1982 the Comptroller of the Currency of the United States declared Penn Square Bank, N.A. insolvent and appointed the FDIC as receiver of Penn Square Bank, N.A., ("Penn Square Bank") pursuant to 12 U.S.C. §§ 191 and 1821(c), for the purpose of taking custody of and liquidating the insolvent bank's assets.

Prior to July 5, 1982 Plaintiff, Chase had purchased from Penn Square Bank pursuant to written agreements, participations in certain loans made by Penn Square Bank. The aggregate amount of the participations purchased by Chase is approximately $212,225,000.00.

On July 5, 1982, the FDIC commenced to effectuate offsets of funds on deposit with it as successor to Penn Square Bank against indebtedness owed to Penn Square Bank on the participated loans, thereby reducing or cancelling the borrower's indebtedness.

By letter to the FDIC dated July 16, 1982, Chase demanded that the FDIC remit to Chase the amounts equal to Chase's share of the benefits of such offsets. Chase also requested that the FDIC pro. ᐧ an accounting of all amounts offset by the FDIC, the manner and method of such offset and the obligation against which each offset was credited. The FDIC refused to pay to Chase its pro rata share of offsets effectuated against the participated loans. Rather FDIC represented to this Court that

it will deal with Chase and other participating banks as follows:

a) The FDIC will give to Chase, as a participant, a Receiver's Certificate for its pro rata share of the amounts offset. For example, if Penn Square Bank loaned the Borrower $1,000,000.00 and the same Borrower had $500,000.00 on deposit with Penn Square Bank as of July 5, 1982, the following steps would be taken: The Borrower would be allowed to exercise his right to offset his entire $500,000.00 deposit against his $1,000,000.00 debt. The Borrower's debt to Penn Square Bank would be reduced from $1,000,000.00 to $500,000.00. Penn Square Bank's liability to the Borrower on his $500,000.00 deposit would be extinguished. Assuming that Chase had a 90% participation, the FDIC would send to Chase a Receiver's Certificate in the amount of $450,000.00. (90% of the offset).

b) The FDIC will remit to Chase, as a participant, its pro rata share of all payments made on the loan. For example, if the Borrower, subsequent to July 5, 1982, made a $500,000.00 payment on his loan from Penn Square Bank, $450,000.00 will be remitted to Chase, again assuming Chase has a 90% participation.

Further, the FDIC has not provided any of the information concerning the offsets which was requested by Chase. It is this information which is sought by Plaintiff's Motion to Compel.

This action was commenced by Chase on July 19, 1982 seeking injunctive relief against the FDIC and an accounting of funds of depositors offset against participated loans. Plaintiff's Application for a Temporary Restraining Order was denied by the Court on July 19, 1982. On August 2, 1982 Chase filed an Amended Complaint alleging, inter alia, that the funds offset by the FDIC constitute collateral for the participated loans and, consequently, that Chase has a preferred claim to all funds offset by the FDIC against participated loans to the extent of Chase's participation therein.

Here, Plaintiff asserts that in order to be entitled to such a preferred claim on the deposit accounts offset, it must be able to identify a specific fund in the possession of the receiver cognizable in equity as its own property. According to the Plaintiff, in order to meet this burden of proof, Chase must be able to trace the funds offset to the underlying accounts that allegedly constitute collateral for the participated loans. This requires other factual evidence sought in Plaintiff's motion, including identification of the borrower with accounts offset, the nature of the account, the source of the funds offset, and the manner of offset.

In its specific response to Plaintiff's Motion to Compel the FDIC merely argues that the motion is premature and improperly raised because Defendant is not yet in default in responding to Plaintiff's interrogatories and document requests. As Plaintiff notes, Defendant is elevating form over substance since the obvious thrust of the motion is to urge that Chase be permitted to go forward with discovery in order to place the issues in context prior to any dispositive ruling. In addition to opposing Plaintiff's motion Defendant filed a Motion to Dismiss or Motion for Summary Judgment wherein Defendant contends that there is no need for discovery at all in this action because Plaintiff's Amended Complaint fails to state a claim for relief and should be dismissed pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. In the alternative Defendant alleges that there is no genuine issue as to any material fact with respect to Plaintiff's claim and therefore Defendant is entitled to judgment as a matter of law pursuant to Rule 56.

Plaintiff argues that Defendant is attempting to stifle Plaintiff's discovery rights by filing such motions. The Court however views the Defendant's alternative motions as embracing the threshold issue of whether the participating bank is entitled to an undiminished pro rata share of the deposits offset against participated loans and thus concludes that consideration of the motions is necessary at the outset since a ruling in favor of Defendant will be dispositive of this action.

254

■ The essence of the Amended Complaint is Chase's claim that it is entitled to be a preferred claimant with respect to funds obtained by the FDIC as receiver of Penn Square Bank through the process of offsetting deposits against certain debts owed to Penn Square Bank. The borrower's right to offset is not in issue. *Scott v. Armstrong,* 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059 (1892) establishes the right of a depositor in an insolvent bank to set-off any deposits against indebtedness owing to the bank. The equitable right to set-off was held to survive insolvency because "liens, equities or rights arising by express agreement, or implied from the nature of the dealings between the parties, or by operation of law, prior to the insolvency and not in contemplation thereof, are not invalidated." *Scott, supra* at 510, 13 S.Ct. at 151.

■ The leading and in fact only cited authority in the present action is the Ninth Circuit decision in *F.D.I.C. v. Mademoiselle of California,* 379 F.2d 660 (9th Cir.1967), which extended the general rule of the depositors' right of offset to situations involving loan participations.

There the Court held, as a matter of law, that an offset of a deposit against a participated loan does not augment the insolvent estate and therefore does not generate funds which could become the basis for a preferred claim. It therefore determined that a participating bank was not entitled to a preferred payment as a result of an offset transaction between the loan bank and its borrower. According to *Mademoiselle,* in order for a participating bank to establish a preferred claim as to its pro rata share to the offset deposits it must demonstrate that the offsets have resulted in "funds" which have augmented the insolvent estate and which constitute a traceable *res* upon which a constructive trust can be imposed, or that the deposit accounts being offset are collateral for the loans in which it has participated and that it has property rights in those deposits by virtue of the participation agreements.

The Plaintiff Chase has alleged these elements in its Amended Complaint and the Defendant, FDIC submits that both the elements of Chase's claim raise purely questions of law.

In *Mademoiselle* the Court noted that a participating bank may establish a right to recovery against the receiver in preference to the general pro rata distribution of assets "in situations where the facts are such that the court must say in equity that the property is not that of the bank but that of the claimant." Citing *John L. Walker Co. v. Alden,* 6 F.Supp. 262, 267 (E.D.Ill.1934). In this regard the claimant "has a heavy burden of proof, and unless he clearly and certainly identifies the fund he must fail." *Converse Rubber Co. v. Boston-Continental Nat'l. Bank,* 12 F.Supp. 887, 893 (D.Mass. 1935), aff'd 87 F.2d 8 (1st Cir.1936). Thus the participating bank must be able to identify a specific fund or payment in the possession of the receiver cognizable in equity as the participating bank's own property.

■ In other words if a depositor made a specific payment on the loan which "augmented" the assets of Penn Square Bank or the receiver FDIC the participating bank might establish a preferred claim. However an offset is not a payment but merely a setting-off against the loan of previously established credits. Under *Mademoiselle,* such an offset is insufficient to establish a fund which the claimant may call its own. An offset is a bookkeeping transaction or "a mere shifting of credits". By its very nature an offset cannot augment the receiver's estate.

Finally the *Mademoiselle* court concluded:

"Thus, the essential element of preference is missing from Union's [the participating bank] claim: there has been no augmentation of the bank's assets. In fact, as appellant points out, the setoff has actually decreased the assets in the hands of the receiver by reducing the debt owed to the bank by Mademoiselle [the depositor]. The bank's debt on the deposit has in effect been cancelled out by a paper transaction, and provides no basis for a preferential payment." at 666.

The Plaintiff Chase has made numerous arguments in an attempt to distinguish the present action from *Mademoiselle* on the facts. Most are without merit but the Court will address a possible distinction noted by Plaintiff.

Chase suggests that because in *Mademoiselle* the borrower was unaware of the participant's interest in the loan and in the present action some of the borrowers had knowledge of the participations the two situations are different.

The Mademoiselle court regarded the lack of the borrower's notice as an additional equity in favor of the borrower-depositor's right of setoff and framed the issue as follows:

"In addition to the foregoing findings and conclusions, the record discloses that the note was made payable on demand or on July 31, 1965. The note remained in the hands of SFNB, and Mademoiselle continued to make its payments on the note to SFNB after the assignment of the 80% interest to Union." *Id.* at 662.

The court then further stated:

"Therefore, the assignment does not operate to defeat the maker's claims against the assignor, especially since Mademoiselle was never notified of the assignment and *continued to make its payments on the note directly to SFNB, and since SFNB retained possession of the note.* So far as Mademoiselle was concerned, the note was due solely to SFNB, and the unannounced transfer of an interest or sale of a participation certificate in the note should not dilute the uninformed depositors' ordinary right to setoff." *Id.* at 664. (Emphasis added)

According to *Mademoiselle,* it is the knowledge of an assignment, coupled with knowledge of the transfer of a note evidencing indebtedness and further coupled with knowledge of the proper party to pay, i.e., the assignee, that could have had a bearing on the court's reasoning if such knowledge had been shown. There is no allegation in the present case any borrower was notified prior to July 5, 1982 that Chase had an "assignment" of a part or all of a borrower's loan. Further, there is no allegation that any borrower was instructed to pay directly to Chase its claimed share of payments on the loan nor is there any claim that any borrower ever made payments to Chase.

■ This Court is convinced that the fact that some of the borrowers from Penn Square Bank had notice that a loan participation had been sold to another bank, such as Plaintiff Chase does not shift the equities from the borrowers to the participating bank and thus the alleged distinction between this action and *Mademoiselle* is not dispositive.

The Plaintiff also alleges that the deposit accounts being offset collateralized the participated loans and that the participation Agreements between Chase and Penn Square Bank *imparted an interest in such collateral to Chase.* If this were true Chase alleges there would be a pre-existing specific "fund" in which Chase has an equitable property interest—a trust *res* in existence in the particular accounts held by the FDIC as receiver of Penn Square Bank in favor of the participating bank.

Defendant argues that the deposits were not security for the participated loans and moreover that under the express terms of the participation agreements Chase had no property interest in the collateral since there was no assignment of the loans by Penn Square Bank to Chase.

The transactions underlying Chase's claim were commenced when certain borrowers borrowed money from Penn Square Bank. The debts were evidenced by notes and/or loan agreements and often, additionally by security agreements, guarantees or other forms of collateralization. The security agreements provided that Penn Square Bank had a security interest in certain described collateral and proceeds therefrom. Many of these borrowers also maintained deposit accounts in Penn Square Bank which are the deposits being offset against the participated loans. Subsequently, Penn Square Bank entered into participation agreements which are evidenced by

Certificates of Participation with Chase which provide in pertinent part:

"Said participation has been sold on the following terms, to which the participant, by acceptance thereof, agrees:

1. The bank [Penn Square Bank] will promptly credit the account of, or remit to, the participant [Chase] the participant's pro rata share of all payments of the principal of or interest on the above-mentioned loan (hereinafter called 'the loan').

\*　　\*　　\*　　\*　　\*　　\*

3. So far as the rights of the participant are concerned, the security, if any, for the loan shall be deemed to be that hereinabove specifically listed as described, together with any substitution therefor, and any additional security specifically pledged to the Bank to secure the loan. The participant shall have no interest in any property taken as security for any other loan or loans made to the borrower by the Bank, or in any property now or hereafter in the possession or control of the Bank which may be or become security for the loan by reason of the general description contained in any general loan and collateral agreement or collateral notes held by the Bank, except that if any such property or the proceeds thereof shall be applied in reduction of the loan, the participant shall be entitled to share pro rata in such application.

\*　　\*　　\*　　\*　　\*　　\*

5. The Bank reserves the sole right to enforce the obligations of the borrower."

It is clear that under the terms of the participation agreements no security interest in the collateral securing the participated loans was granted to Chase.[1] It is also clear that Penn Square Bank did not assign, either in whole or in part, the participated loans or the collateral securing such loans to Chase. The provisions of the par-

ticipation agreement state that a participation is "sold" to the participating bank. Penn Square Bank reserved the right to enforce the obligations of the borrower. Security for loans was specifically pledged to Penn Square Bank. Most importantly, Penn Square Bank retained the notes themselves which evidenced the loans and collected the payments on the notes from the borrowers.

While an assignee has actual property rights with respect to the assigned accounts, see *Mademoiselle, supra* at 665, the participating bank which is not an assignee has merely contractual rights and no property rights in the participated loans or the collateral securing them.[2]

One additional theory was revealed in the briefs filed by the Plaintiff which the Court must confront. It is apparently contended that Chase is of the opinion that many of the accounts being offset by the FDIC are special accounts of the borrowers maintained for the purpose of receiving payments or principal and/or interest in reduction of the borrowers' obligations on the participated loans. However, no such allegation is contained in Plaintiff's Amended Complaint. If Plaintiff believes this to be a valid theory and one which might promulgate a set of circumstances which could be distinguishable from those discussed herein, Plaintiff may desire to file an Amended Complaint within twenty (20) days to state such a cause of action.

Although the Plaintiff has attempted to factually distinguish *Mademoiselle* from the present action, it is the conclusion of this Court that the *Mademoiselle* rationale is controlling with respect to the legal issues presented in Plaintiff's Amended Complaint. First the offsets are proper. In addition, the offsets being carried out by

---

1. In fact, it should be noted that Chase never argues that Penn Square Bank granted to it a security interest in the collateral but rather alleges that Penn Square Bank granted Chase what it denominates a "direct interest" in the collateral securing the participated loans.

2. The Plaintiff does not maintain that the deposit accounts themselves are collateral for the

loans but that the deposits may contain funds which were proceeds of collateral securing the participated loans i.e. proceeds from oil and gas runs, and thus these funds are the property of Chase. However, since this Court has ruled that Chase has no property interest in the collateral it is not necessary to address this issue.

the FDIC are not augmenting the assets in the hands of the FDIC as receiver of Penn Square Bank. By way of offsetting the deposits against indebtedness to Penn Square Bank, the FDIC is receiving no "funds" but is merely carrying out "paper transactions" which constitute "a mere shifting of credits." In short, there is no *res* to which Chase's claim as a preferred creditor can attach. Further Plaintiff has no property interest in the collateral securing the participated loans which might entitle it to a preferred claim.

Since as a matter of substantive law Plaintiff has stated no claim for relief, there is no discovery which Plaintiff can conduct which might revitalize or breathe life into its allegations.

Accordingly, Plaintiff's Motion to Compel is denied and Defendant's Motion to Dismiss is hereby granted.

IT IS SO ORDERED.