The NORTHERN TRUST COMPANY,
an Illinois state banking
corporation, Plaintiff,

v.

The FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as Receiver for Penn Square Bank, N.A., Defendant.

No. Civ 83–506–R.

United States District Court,
W.D. Oklahoma.

Oct. 15, 1985.

quently, in the course of the receivership, the FDIC offset the borrowers' Penn Square deposit accounts against the balance due on their loans. Receiver's certificates were issued to Northern in proportion to its stake in the offsets. Northern will take its share of the remaining loan payments in "new money" as it is collected from the borrowers.

In Northern Trust's view, "it appears certain" that the actual value of the Receiver's certificates will be less than their face value. Unhappy with this prospect of diminished returns on its participations, Northern Trust filed the instant suit, alleging that through the participations it acquired legal ownership of the loans and collateral; that the Receiver's setoffs impaired Northern's property interests in the loans and collateral; that the borrowers' knowledge of the participations eviscerated the equities of setoff; and that the setoffs were effected by the Receiver in an inconsistent and arbitrary manner. As an alternative theory, Plaintiff claims that the parties intended to create a fiduciary relationship through the participations. According to this view, Penn Square (and, by extension, the Receiver) were responsible to Northern Trust for segregating and safeguarding Northern's share of the loan proceeds on a dollar-for-dollar basis.

The case is pending before the Court on the Receiver's motion to dismiss Plaintiff's First Amended Complaint.

Patrick M. Ryan and Charles E. Geister, III, Ryan, Holloman & Geister, Oklahoma City, Okl., for plaintiff.

Charles C. Baker and Oliver S. Howard, Gable & Gotwals, Tulsa, Okl., for defendant.

## ORDER

DAVID L. RUSSELL, District Judge.

### Background

Plaintiff Northern Trust Company is an Illinois state banking corporation. Defendant Federal Deposit Insurance Company ("FDIC") is the Receiver of Penn Square Bank, an Oklahoma national banking corporation that was declared insolvent by the Comptroller of the Currency in July, 1982. Prior to its insolvency, Penn Square originated and participated loans to "upstream" banks such as Northern Trust. Subse-

### *Discussion*

### *Ownership and Property Rights*

██ A participation relationship is governed by the terms of the participation agreement. *Franklin v. Commissioner of Internal Revenue*, 683 F.2d 125 (5th Cir. 1982). In *Hibernia National Bank v. FDIC, et al.*, 733 F.2d 1403 (10th Cir.1984) the Tenth Circuit construed participation certificates identical to those at bar. The Court concluded that the certificates created an assignment coupled with an agency and expressly found that the certificate "cannot be read to transfer the ownership of the loans." 733 F.2d 1407–1408. (As

Plaintiff emphasizes, *Hibernia* was an injunction suit entailing unique standards of proof; however, that distinction does not undercut the circuit's substantive interpretation of the certificate's terms.)

■ The certificates evidencing Northern's participations (which are set forth in the appendix to this Order) state, *inter alia,* that Penn Square would "hold for Northern's account" its pro rata share of loan payments; that Penn Square retained sole discretion to modify or compromise the loans; and that Penn Square's responsibility to Northern was limited to the "same care" that Penn exercised toward non-participated loans. The terms of Northern's certificates gave it less input into Penn Square's management of the participated loans and their collateral than the agreement construed by this Court in *Seattle-First Nat'l Bk v. FDIC,* 619 F.Supp. 1351 (W.D.Okl.1985), which arguably created property and trust interests. Even that possibility did not preclude offset, however, and the weaker terms of Northern's certificates do not preclude offset here. The Court concludes that Northern Trust's certificate did not create or transfer any ownership or property rights in the participated loan or the supporting collateral. *Hibernia National Bank v. FDIC.*

### Borrowers' and Banks' Right of Offset

In *FDIC v. Mademoiselle of California,* 379 F.2d 660 (9th Cir.1967), *Hibernia,* and *Chase Manhattan Bank v. FDIC,* 554 F.Supp. 251 (W.D.Okla.1983), the Receiver's offsets against participated loans found support in the borrowers' equitable right to offset, *Scott v. Armstrong,* 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059 (1892). Plaintiff posits that the purpose of the offsets allowed in those cases was preservation of the borrowers' rights, whereas in the present case it is the Bank's estate which benefits from the offset because the Bank retains the "real dollars" of the borrower's deposits and passes upstream the (allegedly discounted) receiver's certificates. In Northern's view, this is a usurpation of equities.

Plaintiff is correct that a bank's "lien", or right to setoff, is conceptually distinct from the borrower's right to setoff. Okl. Stat.Ann. tit. 42 § 32 (West, 1979) provides that: "A banker has a general lien, dependent on possession, upon all property in his hands belonging to a customer, for the balance due to him from such customer in the course of the business." Although the statute uses the term "lien", Oklahoma courts have pointed out that the bank's right "is more accurately a right of setoff for it rests upon, and is coextensive with, the right to setoff as to mutual demands. (citation)" *Ingram v. Liberty National Bank and Tr. Co. of Okla. City,* 533 P.2d 975, 977 (1975). *Ingram* held that a bank's statutory setoff rights presupposes:

> a) that the fund deposited in the bank by the debtor was the property of the latter; (b) that the fund was deposited without restrictions and was not a special fund, and (c) (there was) an existing indebtedness then due and owing by the depositor to the bank.

(citing *Zollinger v. First National Bank of Okla. City,* 259 P. 141.) [5A A. *Michie on Banks and Banking,* § 115c (1983).]

■ Setoffs by the FDIC as Receiver are specifically authorized by the Federal Reserve Act, 12 U.S.C. § 1822(d). The FDIC as Receiver may "withhold payment of such portion of an insured deposit of any depositor in a closed bank as may be required to provide for ... any liability of such depositor to the closed bank or its Receiver, which is not offset against a claim due from such bank, pending the determination and payment of such liability by such depositor ..." We take this statute to recognize the Receiver's authority, on behalf of an insolvent bank, to effect an offset against a depositor for the "claim due from" the bank, and to create a bank's federal statutory right to offset.

A bank's claim to setoff has also been recognized as having a basis in equity. *Messick v. Rardin,* 6 F.Supp. 200, 202 (E.D. Ill.1934); 5A Michie § 1156.

■ The predicate for setoff is mutuality between the creditor bank and the borrow-

er (*Navajo Tribe v. Bank of New Mexico*, 700 F.2d 1285 (10th Cir.1983)) and so long as mutuality continues, insolvency does not preclude a bank from effecting setoffs. 5A *Michie on Banks and Banking*, §§ 115(b)(c) (1983).

In like manner, as long as the lead bank maintains creditor status and responsibilities in a participated loan, mutuality survives between the lead bank and the borrower and setoff is not precluded. The Court finds that according to the terms of Northern Trust's participation certificates, Penn Square as lead bank retained sufficient mutuality to warrant the Receiver's exercise of its statutory right to offset. The Court further finds that the bank's right to offset survives its insolvency and is incorporated into the Receiver's duty to marshal the bank's assets 12 U.S.C. 1821(d). *See Seattle First Nat'l Bank v. FDIC*, 619 F.Supp. 1351, 1357–1358 (W.D. Okl.1985).

From an equitable standpoint, enforcing an offset against a participated loan entails balancing benefits and hardships among at least three parties: the borrower, the lead bank, and the participant(s). These permutations are compounded when insolvency is an added factor and the Court readily admits to frustration, and perhaps impossibility, in striking a balance satisfactory to all parties. The Court concludes that it is sufficient to resolve the claims in favor of the borrowers and the lead bank (so long as a sufficient basis for mutuality exists), leaving participant banks to bear the market risk of their participation venture. To charge participants with responsibility for investigating the creditworthiness and solvency of both the lead banks and their borrowers is consistent with banking policies announced by the Comptroller of the Currency in its guidelines for loan participations, infra.

In summary, the Bank, and derivatively the Receiver, had an independent basis in statute and perhaps in equity to effect the offsets here. No term in the participation certification precluded passing on an offset to the upstream bank. The language chosen by the parties in their agreements and

certificates may have had commercially perilous consequences, and indeed these may be perilous times for banks generally, but the solution lies in better draftsmanship of participation certificates. See, "Protecting Loan Participations from Setoffs," 18 Tulsa L.J. 261 (1982).

*Borrowers' Knowledge of Participations*

Plaintiff alleges that many of the borrowers knew or should have known that their loans were in fact being funded by banks other than Penn Square. This knowledge, in Plaintiff's view, belies the borrowers' expectation of offset. In support of this theory, Plaintiff emphasizes the language in *Mademoiselle* suggesting that the borrower there was ignorant of the participation. However,

> this court is convinced that the fact that some of the borrowers from Penn Square bank had noticed that a loan participation had been sold to another bank ... does not shift the equities from the borrowers to the participating bank.

*Chase Manhattan Bank v. FDIC*, 554 F.Supp. at 255. The borrowers' knowledge is similarly immaterial to the lead bank's surviving right to offset, *supra*.

That Northern Trust and other upstream banks were disappointed in their commercial expectations of Penn Square is not disputed, but Northern's disappointment can be termed "inequitable" only if it had an equitable claim, interest, or fund at stake. Such is not the case. As explained above, the participation certificates created no property interest or ownership right. Whatever factual disparity exists between the face amount and the actual value of Receiver's certificates, this discrepancy does not overcome the borrowers' and bank's right to effect the offset. Furthermore, as explained below, no "augmentation" to the Receiver's estate resulted from the offset and no fiduciary relation was created by the participation.

*Augmentation and Preference*

In *Hoffman v. Rauch*, 300 U.S. 255, 57 S.Ct. 446, 81 L.Ed. 629 (1937), a deposi-

tor whose bonds had been sold by the bank prior to its insolvency and without the depositor's authorization sought to establish a preferred claim for the amount of the bonds' sale price, which the bank had credited to her account. The depositor's argument in support of her claim was strikingly similar to Northern's position regarding its setoff:

> (Depositor) submits that since the bank used the bonds in discharge of a liability it was thereby saved the use of its own funds for that purpose and the assets of the bank at the time of closing were therefore larger in amount than they otherwise would have been. 300 U.S. at 256, 57 S.Ct. at 446.

The Court expressly rejected this argument, holding that the bank had not realized an increase in its own assets; it had merely substituted its obligation to pay the deposited sale revenues for its obligation to pay the amount of the bonds. Although the depositor in *Hoffman* did not recover the sale proceeds, dollar-for-dollar, in the face amount of the bonds, that discrepancy was not considered an augmentation. In the present case, Receiver's certificates (for the amount of the offset) were substituted for loan payments (in the same amount) by the borrower. Assuming, *arguendo*, that Northern's projections are correct and there is a discrepancy between the face amount of the certificates and their actual value, that difference is still not an augmentation to the bank, according to *Hoffman*.[1]

### Fiduciary Relations

■ Ordinarily, banks involved in commercial arm's-length transactions do not stand in a fiduciary relation to each other (*Aaron Ferer and Sons, Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 122 (2nd Cir.1984)); *Barclay's Bank D.C.O. v. Mercantile Nat'l Bank*, 481 F.2d 1224, 1235 (5th Cir.1973), cert. dism'd 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974). This general principle holds true for loan participation agreements. *In Re Colocotronis Tankers Securities Litigation*, 449 F.Supp. 828, 833 (S.D.N.Y.1978). In participations, as in other commercial transactions, the participants are held to marketplace standards of vigilance and independent inspections. Guidelines for loan participations issued by the Office of the Comptroller of the Currency indicate that purchasing (upstream) banks should conduct independent and prudent evaluations of loans offered for participation: "The acceptance by a purchaser of a favorable analysis of a loan issued by the seller, a credit rating institution, or another entity does not satisfy the need to conduct an independent credit analysis." Comptroller of the Currency, Banking Circular 181 (rev. Aug. 2, 1984), *Federal Banking Law Reports* ¶ 60,799 (Commerce Clearing House.)

The fact that the lead bank holds title while acting as an agent for the participant does not render the agent a trustee for the participant. Restatement Second of Trusts, § 8, comment (h) (1959). The Restatement suggests that if interest or fees are charged between parties for the acquisition or use of money, that factor indicates

---

1. In *Seafirst v. FDIC*, this Court held that wired funds dispatched by an upstream bank to fund its share of a participated loan could constitute a "special deposit" and serve as the basis for a preferred claim so long as the funds were wired to a separate account and the Bank's remaining general assets were not depleted below the amount of the special deposit, and so long as the amount of the wired funds remained intact. The crucial distinction between the instant case and *Seafirst* lies in the absence at bar of cognizable augmentation. In *Seafirst* there was an actual infusion of wired funds from the upstream bank. Here, in contrast, there was neither an intended nor an actual loan payment by

the borrower but merely an offset between borrower and bank which cancelled part of the borrower's obligation. As explained by the Supreme Court in *Scott v. Armstrong*, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059 (1892) and *Hoffman v. Rauch*, 300 U.S. 255, 57 S.Ct. 446, 81 L.Ed. 629 (1936), and as recognized in this Circuit by *Hibernia National Bank v. FDIC*, 733 F.2d 1403 (10th Cir.1984), an offset is not a transfer of funds; it is a cancellation of debt. There being no augmentation of receivership assets effected through the instant offsets, equitable and agency principles do not suffice to create a preference.

a commercial rather than a fiduciary relationship. This observation is not crucial to our decision, however.

Notwithstanding the foregoing general principles, Plaintiffs insist that Penn Square and Northern Trust *intended* to create a fiduciary relationship. The intention of the parties must be ascertained from the terms of the contract itself, if the terms are clear (*Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690 (10th Cir. 1981)), and extrinsic evidence is considered only in the absence of clarity. *Premier Resources Ltd. v. Northern Natural Gas Co.*, 616 F.2d 1171 (10th Cir.1980), *cert. den.* 449 U.S. 827, 101 S.Ct. 92, 66 L.Ed.2d 31 (1980) (decision based on Oklahoma contract law); *Humphreys v. Amerada-Hess Corp.*, 487 F.2d 800 (10th Cir.1973); *Ollie v. Rainbolt*, 669 P.2d 275 (Okla.1983). Construction of an unambiguous contract is a matter of law, and the Court will interpret the terms, absent significant ambiguity. *CMI Corp. v. Gurries*, 674 F.2d 821 (10th Cir.1982); *Corbett v. Combined Communications Corp. of Okla.*, 654 P.2d 616 (Okla.1982).

The Court finds that the terms of Northern Trust's participation certificates clearly and unambiguously establish an assignment and agency. *Hibernia National Bank v. FDIC.* According to the certificates, the parties agreed that Penn Square would act as the holding and collecting agent for Northern Trust's pro rata interest in the note. Penn Square reserved to itself all rights concerning the release and substitution of collateral, the authority to consent to assignment and transfer of the participation, and the discretion to enforce or exercise the terms of the note. Accordingly, the Court determines as a matter of law that the participation certification clearly and unambiguously indicate that no fiduciary duties were established in the participation relationship between Penn Square and Northern Trust. The parol evidence rule would therefore bar consideration of additional evidence concerning the parties' intentions. Okl.Stat.Ann. tit. 15 § 137 (West, 1983).

*Receiver's Administration of Offsets*

Northern claims that the Receiver has been inconsistent in designating and effecting offsets when a borrower had both participated and non-participated loans. The FDIC concedes that it "may have been inconsistent" in effecting offsets and "may not have always consistently followed its intended policies because of (the) initial mass confusion following the closing of (Penn Square)." (FDIC Brief in Support of Motion to Dismiss at 6 (July 22, 1983)). However, Plaintiff suggests no documentary, statutory, or regulatory authority which governs the Receiver's discretion in applying offsets. This Court has held that the Receiver's Manual does not establish enforceable rights in favor of third parties (*Chase Manhattan v. FDIC; Seattle-First v. FDIC;* accord, *1st State Bk. of Hudson Co. v. U.S.*, 599 F.2d 558, 564 (3rd Cir. 1979), cert. den. 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980). As a matter of general banking practices, where a borrower/depositor has executed more than one note to a bank the bank may apply the depositor's balance to set off whichever debt the bank chooses (5A *Michie on Banks and Banking*, § 119a at 374 (1983)). The Court sees no reason why this same discretion should not be allowed under present circumstances to the Receiver.

*Conclusion*

The terms of the participation certificate do not create or transfer "property interests" or "ownership" of the loan from Penn Square to Northern Trust, nor do the terms establish a fiduciary relation between the banks. Instead, the terms of the certificates clearly and unambiguously indicate the parties' intent to create an assignment coupled with an agency. There are no equities in favor of Northern Trust which outweigh the borrowers' and the bank's respective equitable and statutory rights to the disputed offsets. The borrowers' alleged knowledge of the participations does not negate their equitable interests. The offsets do not create a "special fund" or "augmentation" in support of a prefer-

ence in favor of Northern Trust. The Court reaches these conclusions as matters of law, based on the undisputed facts before the Court.

It appears beyond doubt that Plaintiff can prove no set of facts under the present allegations that would entitle it to the relief sought. *Swanson v. Bixler,* 750 F.2d 810 (10th Cir.1984). Even assuming as true all well pleaded facts concerning the participations and offsets, Plaintiff's claims for relief find no support in the law and accordingly are dismissed under Rule 12(b)6, Federal Rules of Civil Procedure.

## APPENDIX

### CERTIFICATE OF PARTICIPATION
PENN SQUARE BANK na
Oklahoma City

Date _____

TO:

WE ACKNOWLEDGE RECEIPT of $_____ in payment of your participation in that amount in a loan of $_____ made to _____, evidenced by a note dated _____ due _____ with interest at _____ per cent per annum, payable _____

So that you will have a complete description of the subject loan, we are attaching hereto a true copy of the note and a true copy or a description of all security taken by us.

We hereby confirm that in consideration of your payment to us, we are holding for your account a pro rata interest in the unpaid principal of the subject note, together with the same proportionate interest in any and all interest to accrue on the note from and after date, and in any and all collateral securing the same, together with any guaranties thereof.

It is expressly understood that we do not make any representations or assume any responsibility with respect to the validity, genuineness or collectibility of said note, or the collateral securing the same, or guaranties thereof, and that we are entitled to use our discretion with respect to exercising or refraining from exercising any rights, or taking or refraining

from taking any actions which may be vested in us, or which we may be entitled to take or assert under the terms of our note and that, although we will exercise the same care to protect your interest as we do to protect our own, we shall not, so long as we exercise such care, be under any liability to you with respect to anything which we may do or refrain from doing in the exercise of our judgment or which may seem to us to be necessary or desirable in the premises. We reserve the right to release collateral and to permit substitutions of new collateral.

This participation may not be assigned or transferred in whole or in part without our prior written consent. Also it is the understanding that we shall have the exclusive option and privilege of repurchasing this entire participation at any time by paying to you your pro rate share of the unpaid principal and accrued interest or less unearned discount, as the case may be.

We further understand that you will reimburse us in proportion to your participation in this loan for all expenses, attorneys fees, and other liabilities incurred by us in connection with this loan.

Kindly indicate your acceptance of this participation upon the conditions outlined above on the enclosed copy of this participation and return it to us.

Sincerely,
PENN SQUARE BANK na
Oklahoma City

By  _____