The CITIZENS STATE BANK, Liberal, Kansas, a Kansas banking corporation, Plaintiff,

v.

The FEDERAL DEPOSIT INSURANCE CORPORATION, et al., Defendants.

No. CIV 84–188–R.

United States District Court, W.D. Oklahoma.

July 15, 1986.

Susan Wilson and Glenn M. Jones, Jones, White & Beck, Oklahoma City, Okl., for plaintiff.

Charles V. Wheeler, Gable & Gotwals, Tulsa, Okl., Charles C. Green, Harold M. Durall, Oklahoma City, Okl., Richard B. Talley and L. Kaye Farrar, Talley, Perrine & Smith, Norman, Okl., Burck Bailey and Warren F. Bickford IV, Fellers, Snider, Blankenship, Bailey & Tippens, Jack G. Bush and Gary R. Underwood, Bush & Underwood, Tom R. Cornish, Kirk & Chaney, Peter B. Bradford and Clifford A. Jones, Bradford, Haswell, Jones, Susan R. Byrd, Doug L. Perry, Williams, Luttrell, Boren & Perry, Oklahoma City, for defendants.

## ORDER

DAVID L. RUSSELL, District Judge.

This action grows out of a loan participation agreement entered into between Penn Square Bank (Penn Square) and the Plaintiff, Citizens State Bank, Liberal, Kansas (Citizens). Citizens brought its initial complaint against the Federal Deposit Insurance Corporation (FDIC), as receiver for Penn Square and against several of the former directors and officers of Penn Square. Defendants[1] brought motions to dismiss the complaint. Before these motions could be decided, the Plaintiff amended the complaint to add to Count One a claim under 15 U.S.C. § 78b(j) and the corresponding SEC rule, 12 C.F.R. 240.10b–5. Most of the Defendants renewed their motions to dismiss against the amended complaint. Plaintiff then amended the complaint for a second time, to correct a typographical error in the first amended complaint. Once again, the Defendants renewed their motions, joined now by the FDIC, requesting dismissal of the complaint as amended.

After considering the pleadings, affidavits and extensive briefs filed by the parties, this Court concludes the motions must be granted in part and denied in part.

### I.

Private Right of Action under § 17(a).

■ Count One of the complaint alleges a violation of § 17(a) of the Securities Act of 1933. 15 U.S.C. § 77q(a). The rule in this District is clear. No private right of

---

1. Defendants Burks, Coe, Cook, Dunn, Haugland, Margo, Randolph, Richardson, and Ross, all former directors of Penn Square have been voluntarily dismissed from this action since bringing their motions. Defendants Beller, Jennings, Stubbs, and Swan, also former Penn Square directors, have brought motions to dismiss against each complaint. Defendant Stubbs has additionally moved for summary judgment.

Defendants Cates and Dean, former officers of Penn Square, filed motions to dismiss the original complaint, adopting the arguments of the Defendant Swan, but have not renewed those motions against the amended complaints. The substance of the arguments for dismissal, however, have not changed since the original motions. Therefore, Cates and Dean's original motion to dismiss will be taken as applying to the second amended complaint, in the interests of a "just, speedy, and inexpensive" determination of these issues. (Fed.R.Civ.P. 1).

action may be implied from the text of that statute. Therefore, that portion of Plaintiff's complaint alleging violation of § 17(a) is dismissed with prejudice. *Freeman v. McCormack*, 490 F.Supp. 767, 768 (W.D. Okla.1980).

## II.

### Loan Participation Certificates as "Securities".

Defendants' motion to dismiss both Counts One and Two of the original and amended complaints is based on their position that a loan participation agreement is not a "security". Thus, they argue, it falls outside the intended scope of securities legislation, whether it be § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a); § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and its corresponding SEC rule, 17 CFR and 240.10b–5; or corresponding provisions of the Oklahoma Securities Act.

The Supreme Court's test for what constitutes a security requires that four factors be present: (1) an investment (2) in a common venture (3) premised on a reasonable expectation of profits (4) to be derived from the entrepreneurial or managerial efforts of others. *SEC v. W.J. Howey*, 328 U.S. 293, 298, 66 S.Ct. 1100, 1102, 90 L.Ed. 1244 (1946); *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 *reh'g denied*, 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 115 (1975). Although the Tenth Circuit has not addressed the application of this test to loan participation agreements, each Circuit Court that has faced this issue has concluded that these agreements are not securities. *See, e.g., Kansas State Bank in Holton v. Citizens Bank of Windsor*, 737 F.2d 1490, 1494, n. 6 (8th Cir.1984); (citing cases).

■ This clear trend does not foreclose the issue, however, since each case must be evaluated based on the facts and circumstances of that particular transaction. "Substance is exalted over form and emphasis is placed upon economic reality."

*Vincent v. Moench*, 473 F.2d 430, 435 (10th Cir.1973). Applying the *Howey-Forman* test to Citizens' allegations regarding its loan participation agreement with Penn Square, then, this Court concludes that the agreement is "purely commercial in nature", and not the type of "investment" transaction intended to be regulated by SEC rule 10b–5. *McGill v. American Land & Exploration Co.*, 776 F.2d 923, 925 (10th Cir.1985). *See generally*, D. Scholl & R. Weaver, *Loan Participations: Are They "Securities"?*, 10 Fla.St.U.L.Rev. 215 (1982). (cited as Scholl & Weaver).

The Citizens-Penn Square transaction has several features more characteristic of a "commercial" venture than an "investment". The loan participation was a transaction "negotiated one-on-one between the parties" rather than publicly offered and was subject to federal banking regulations. *Marine Bank v. Weaver*, 455 U.S. 551, 559–60, 102 S.Ct. 1220, 1225, 71 L.Ed.2d 409 (1982) (Certificate of deposit not a security because part of routine banking services). Plaintiff has argued that the banking regulations were ineffective, so Penn Square's transactions should also be subject to securities regulations. Yet, subjecting loan participation agreements to the extra documentation and delays required by the securities laws will no more guarantee bank compliance with these laws than with banking regulations. It might, however, "needlessly curtail the economically necessary, large financings of today's marketplace that, due to their size, occur only through loan participations." Scholl & Weaver, *supra* at 232.

Moreover, Citizens is not the unsophisticated investor the securities laws were designed to protect: Citizens' access to information regarding the security of the loan collateral was not restricted and it need not have relied on Penn Square. Indeed the Certificate of Participation itself noted that Penn Square made no representations and assumed no responsibility with respect to the collateral. (Pl.Exh. "E") *See, Union Planters National Bank v.*

*Commercial Credit Business Loans, Inc.,* 651 F.2d 1174, 1178 (6th Cir.1981).

The very fact that the loan was collateralized as well as the very short duration of this transaction—only six months—both indicate a "commercial" character rather than an investment. *Great Western Bank & Trust v. Kotz,* 532 F.2d 1252, 1258 (9th Cir.1976). This Court must conclude that the transaction was a purely commercial banking venture which "does not rise to the level of schemes regulated by the [securities] Acts." *First National Bank & Trust Co. of Oklahoma City v. Thoele,* 1982 CCH Dec. ¶ 98,854 at p. 94,409 (W.D. Okla.1982).

Despite these "commercial" characteristics, Citizens has insisted that its participation was an investment because "the 1981–82 oil and gas exploration period was more akin to the investment hysteria preceding the 1929 stock-market crash than to common commercial situations." (Pl. Supp.Br. at 2). The atmosphere in which the loan participation was made, however, does not change its basic character. A bank's development of an expanding commercial lending market is not equivalent to the public speculative investing that prompted passage of securities legislation. If, in its haste to take advantage of the expanding market, Citizens entered into a loan participation with less vigilance than banking standards dictate, their actions do not transform the commercial nature of the transaction. *Cf. Northern Trust Co. v. FDIC,* 619 F.Supp. 1340, 1344 (W.D.Okla. 1985). As the Sixth Circuit noted in reviewing a similar loan participation agreement:

> The securities laws are not a panacea for commercial loans gone awry. Relief from the consequences of commercial transactions unwisely contracted must be found in another haven.

*United Planters, supra,* 651 F.2d at 1185 (rejecting argument that, because lead lender was given "practically unlimited discretion" in servicing loan, participation was an investment). *See also, United American Bank of Nashville v. Gunter,* 620 F.2d 1108, 1114–18 (6th Cir.1981) (bank's participation, shared with four other lenders, in a loan to purchase majority interest in bank, held a commercial transaction rather than investment); *American Fletcher Mortg. Corp., Inc. v. U.S. Steel Credit Corp.,* 635 F.2d 1247, 1254 (7th Cir.1980) (affirming dismissal of securities claim based on credit corporation's participation, with two other lenders, in a loan financing purchase of real estate and condominium development).

The determination that this transaction was a commercial transaction rather than an "investment" is dispositive of this issue. Accordingly, Defendants' motion to dismiss Count One of the complaint, as amended, is granted with prejudice.

■ 71 O.S. § 501 of the Oklahoma Securities Act mandates the construction of this Uniform Act as so to "coordinate the interpretation and administration of this Act with the related federal regulation." *Cf. also, State v. Hoephner,* 574 P.2d 1079, 1081 (Okla.Cr.1978). Accordingly, the conclusion that the loan participation agreement in this case is not a "security" under the federal Acts precludes an action under the Oklahoma Act as well. *Cf. American Fletcher Mortgage Corp., Inc. v. U.S. Steel Credit Corp.,* 635 F.2d 1247 (7th Cir.1980). Count Two of the complaint is also dismissed with prejudice.

### III.

### Fraud Claims.

■ Counts Three through Five of the complaint allege three variations of state law claims for fraud: Count Three alleges actual fraud; Count Four, constructive fraud based on a common-law duty to disclose; and Count Five, constructive fraud based on a fiduciary duty to disclose. The Defendants have moved to dismiss these claims for failure to plead with specificity, 9(b) Fed.R.Civ.P., and for failure to state a claim for relief, 12(b)(6) Fed.R.Civ.P. Plaintiff's complaint sets out the material facts alleged to have been fraudulently omitted or concealed by Penn Square: Those are, that the collateral securing the

loan in which Citizens bought a participation was also used to secure additional Penn Square loans, and that Penn Square had also sold participations in these loans to other banks as well as Citizens. Documents supporting these allegations are attached to the complaint as exhibits. The complaint alleges that this fraudulent concealment occurred during negotiation of the loan participation with Penn Square, details of which are provided by the affidavit of former Citizens Vice-President Larry Compton. Finally, the complaint explains when and how the Plaintiffs first discovered these facts.

Certainly, these are sufficient allegations to appraise the Defendants of the nature of the fraud claim against them and to allow them to frame a response. *In Re Longhorn Securities Litigation*, 573 F.Supp. 255, 263 (W.D.Okla.1983). (Indeed answers have already been filed.) Rule 9(b) does not require pleading of evidentiary facts, merely that the "circumstances" constituting fraud be stated with particularity. *Nolan Brothers, Inc. v. United States*, 266 F.2d 143, 145–46 (10th Cir.1959).

Defendants rely heavily on cases from the Second Circuit, especially the Southern District of New York, that have developed extremely stringent pleading requirements. *E.g., Todd v. Oppenheimer & Co., Inc.*, 78 F.R.D. 415 (S.D.N.Y.1978). However, such a return to "fact pleading" is far greater than that required in most circuits, including our own, where Rule 9(b) must be read in conjunction with Rule 8's policy of "notice pleading". *See generally,* 5 Wright & Miller, *Federal Practice and Procedure* § 1298 (1969); Note, *Pleading Securities Fraud with Particularity under Rule 9(b)*, 97 Harv.L.Rev. 1432, 1433 n. 7 (1984).

Defendants claim, in addition, that the complaint fails to allege specifically which Defendant, at what point, played a role in the fraudulent concealment. However, even the Southern District of New York Court acknowledges that if conspiracies to conceal information are alleged, the facts to support such allegations are peculiarly within the knowledge of the Defendants;

accordingly, motions to dismiss are inappropriate until discovery has been conducted. *See, e.g., Pellman v. Cinerama, Inc.*, 503 F.Supp. 107, 111 (S.D.N.Y.1980); *Banowitz v. State Exchange Bank*, 600 F.Supp. 1466, 1469 (N.D.Ill.1985).

However, as to each of the fraud claims there remains the question of whether, even if all the well-pled allegations of Plaintiff's complaint are assumed to be true, the complaint states a claim for relief. The elements of actual and constructive fraud are set out in 15 O.S.A. §§ 58 and 59 (1983). Under either action, there must be a duty to disclose material facts in order to give rise to a claim of fraudulent omission. Citizens alleges two bases for such a duty: (1) a fiduciary relationship and (2) Penn Square's superior knowledge, not readily available to Citizens, upon which Citizens relied.

■ As to the fiduciary duty claim, this Court faced an identical claim, arising under a Penn Square participation agreement substantially identical to that executed between these parties, in *Northern Trust Co. v. FDIC*, 619 F.Supp. 1340 (W.D.Okla.1985). The Court concluded there that "Ordinarily, banks involved in arm's length transactions do not stand in a fiduciary relation to each other." *Id.* at 1344. Furthermore, Penn Square's loan participation agreements were held to unambiguously reveal that no fiduciary relationship was intended or created through executing these agreements. *Id.* at 1345.

The Defendant directors and officers of Penn Square are also alleged to have been fiduciaries of Citizens. Since the only basis for this relationship would be through the loan participation agreement, the conclusion that the agreement did not create such a relationship settles this issue as to all Defendants. Their motion to dismiss Count Five of the complaint is granted with prejudice.

■ The second basis for a duty to disclose is superior knowledge on the part of Penn Square and justifiable reliance on the part of Citizens. *See, Aaron Ferar &*

*Sons, Ltd. v. Chase Manhattan Bank,* 731 F.2d 112, 123 (2nd Cir.1984). In *Barry v. Orahood,* 191 Okl. 618, 132 P.2d 645 (1943), the Supreme Court of Oklahoma noted that the parties' situation, matters dealt with, and subject-matter in hand must be considered in deciding whether a duty to disclose exists. Given this standard, dismissal before discovery would be inappropriate.

■ The Director and Officer Defendants argue, however, that they owe no duty to Citizens but to the bank only. This is indeed the general rule of law. *See e.g., FDIC v. Boone,* 361 F.Supp. 133 (W.D. Okla.1973). Where however, a creditor has been uniquely injured by wrongful actions in which the directors and officers actually participated, direct liability may result. *Id.* at 165. Whether such a situation exists here must await discovery. Therefore, Defendants' motions to dismiss the third and fourth counts of Plaintiff's complaint are overruled.

Summarizing then, this Court concludes that Counts One, Two and Five of the complaint fail to state a claim upon which relief can be granted and are dismissed with prejudice. Defendants' motions to dismiss Counts Three and Four are overruled.