**COLORADO STATE BANK OF WALSH, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION and United States of America, Defendants.**

Civ. A. No. 87–M–207.

United States District Court, D. Colorado.

July 14, 1987.

John Gelhausen, Lamar, Colo., for plaintiff.

Dina Biblin, Trial Atty., Torts Branch, U.S. Dept. of Justice, Jane Rossowski, Legal Div., Federal Deposit Ins. Corp., Washington, D.C., Nancy E. Rice, Asst. U.S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

The Plaintiff, Colorado State Bank of Walsh (Bank of Walsh), purchased a 100% "participation interest" in a $100,000 loan to John R. and Shirley M. Sharpe from First National Bank of Springfield (Bank of Springfield). The Federal Deposit Insurance Corporation (FDIC) assumed control of the Bank of Springfield before the first installment became due on the Sharpe loan. The FDIC as receiver sold the Sharpe note to itself in its corporate capacity.

The Sharpes have defaulted on their loan and now Bank of Walsh is suing FDIC and the United States on multiple claims for relief. The first claim for relief is entitled "Breach of Expressed Contract" and it asserts a contractual obligation of the Bank of Springfield, and FDIC as its successor, to "collect and enforce the note or loan and collateral by suit, foreclosure or otherwise." Complaint, First Claim, ¶ 3.

The second claim alleges that the FDIC negligently serviced the Sharpe loan and the third claim is that the FDIC negligently breached its agency duties under the terms of the contract.

The final claim is one for conversion, the plaintiff alleging that certain of FDIC's actions "seriously interfered with Plaintiff's right to collect under its Participation Agreement." Complaint, Fourth Claim, ¶ 2.

The defendants have moved for summary judgment. There are no material facts in dispute, the legal issues have been briefed adequately and oral argument would not assist the court in its determinations.

■ While the complaint alleges the breach of an express contract, the plaintiff contends in its brief in opposition to this motion for summary judgment that there was an implicit duty to collect the Sharpe note. The plaintiff's contract claim is contrary to the plain language of the written agreement between the banks.

The third paragraph of the first claim, quoted above, misstates the terms of the contract. The Bank of Springfield did not promise to collect and enforce the loan. On the contrary, the terms of the participation agreement clearly leave to the Bank of Springfield full discretion as to whether or when to collect or enforce the loan. It states that "assignor [Bank of Springfield] is to have custody of said note or loan ... with authority to conduct and control in assignor's name the collection, and enforcement of said note or loan ... by suit, foreclosure, or otherwise ..." Participation Agreement, Exhibit 1 to Complaint.

Nowhere in the express terms of the agreement is there any mention of a duty on the part of Bank of Springfield to collect or enforce the loan to protect the interests of the plaintiff. Consequently, the plaintiff, in its brief, argues that there must be an implied term to that effect in this contract. Plaintiff states that:

> [b]y retaining this authority and not transferring to Plaintiff the right to undertake collection of the note, the First National Bank of Springfield implicitly assumed a duty to Plaintiff as 'Participant' under the Participation agreement to exercise its authority and collect or enforce the Sharpe loan by suit foreclosure or otherwise. If this were not the case there would be no reason why any bank would participate with a lead bank in a loan since the participant would have no recourse if the lead bank unrea-

sonably refused to take any collection action ...

Plaintiff's Brief, p. 7.

What this argument overlooks is the apparent misuse of a form agreement obviously designed for participation by the assignment of an undivided partial interest in the loan. If the assignor bank retained some interest, it would have a common objective in collecting for the benefit of both banks. It would be expected that when a full 100% interest is assigned, the loan would be transferred to the assignee to collect for its own account.

The express terms of the participation agreement govern the relationship between the parties. *In Re Continental Resources Corp.*, 799 F.2d 622, 624 (10th Cir.1986). Furthermore, "[i]f the terms are clear, the intent of the parties must be ascertained from the contract itself. A contract is ambiguous only if it is reasonably and fairly susceptible of more than one meaning; the fact that the parties disagree as to the meaning does not establish the presence of ambiguity." *Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690 (10th Cir.1981) (citations omitted).

In addition to the section of the participation agreement, quoted above, concerning Bank of Springfield's "authority to conduct and control ... the collection and enforcement" of the loan, the agreement also states that:

> the *sole* liability of assignor [Bank of Springfield] hereunder shall be to distribute to the participant [Bank of Walsh] the latter's proportionate share of any payments of principal or interest which assignor may receive on said notes or loan; ... assignor does not in any way warrant or guarantee the payment of said note or loan or of the principle or interest thereof ...

Participation Agreement, Exhibit 1 to Complaint (emphasis added).

These statements are the only relevant provisions in the agreement. There is no provision concerning a duty to collect and these terms make it clear that none exists. The only duty the defendants owe to the plaintiff under this agreement is the duty

to pay over to the plaintiff any payments it may receive.

In *Northern Trust Co. v. F.D.I.C.*, 619 F.Supp. 1340 (W.D.Okl.1985), the court noted that:

> [o]rdinarily, banks involved in commercial arm's-length transactions do not stand in a fiduciary relation to each other. This general rule holds true for loan participation agreements. In participations, as in other commercial transactions, the participants are held to marketplace standards of vigilance and independent inspections. Guidelines for loan participations issued by the Office of the Comptroller of the Currency indicate that purchasing (upstream) banks should conduct independent and prudent evaluations of loans offered for participation ...

*Id.* at 1344 (citations omitted).

Thus, the plaintiff, a participant in an arm's-length commercial transaction, is responsible for, first, knowing the terms of the agreement it signed, and, second, for determining for itself the value and security of the loan it was participating in. To the extent that plaintiff feels that no reasonable bank would participate in a loan in which the lead lender had no duty to collect or enforce it, plaintiff is merely acknowledging that it acted unreasonably in using this form of contract.

■ Each of the three tort claims are based on conduct within the discretion granted to the FDIC in managing its assets, and thus within the discretionary function exception to the Federal Tort Claims Act (FTCA).

The United States may not be held liable for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception has been broadly construed by the Supreme Court in *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig)*, 467 U.S. 797, 104 S.Ct. 2775, 81 L.Ed.2d 660 (1984).

In *Varig*, the Court stated that "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Id.* at 813, 104 S.Ct. at 2764. Thus, the question to be answered is "whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability." *Id.* The Court then went on to say that the "underlying basis" of the exception was "to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy ..." *Id.* at 814, 104 S.Ct. at 2764–65.

The actions alleged by the plaintiff in both the negligence claims and the conversion claim are well within the discretion of the FDIC in its corporate capacity, and "grounded in economic policy."

In *Santoni v. F.D.I.C.*, 677 F.2d 174 (1st Cir.1982), the court stated that "[w]hen the FDIC acts in its corporate capacity it is vested with broad discretion to dispose of assets as it sees fit." *Id.* at 179. If the FDIC has broad discretion to dispose of its assets it also has broad discretion to manage them in any way that it feels is appropriate. Furthermore, under the explicit terms of the participation agreement, the Bank of Springfield, and hence the FDIC, was given full authority to "conduct and control" the collection or enforcement of the loan. Participation Agreement, Exhibit 1 to Complaint.

The FDIC was under no duty to render an accounting of the security of the loan or to deliver a statement of what servicing had been done. Once again, the *only* obligation of the assignor under the terms of the participation agreement, was to forward to the assignee any payments received from the Sharpes.

These discretionary decisions, moreover, are protected under the discretionary function exception even if they amount to an abuse of discretion. 28 U.S.C. § 2680(a). Thus, even if the FDIC's failure to respond to the requests made by the plaintiff in the manner that was demanded amounted to negligence, these decisions were still protected. The existence of negligence is sim-

ply irrelevant to the question of whether the exception should be applied. *Barnson v. United States*, 816 F.2d 549, 553 (10th Cir.1987).

The plaintiff attempts to argue that the discretionary function exception does not apply in this instance because all of the acts alleged occurred at the operational level rather than the policy planning level. In support of this argument, it cites a number of cases, all of which were decided before *Varig*.

*Varig*, however, effectively did away with the operational level/planning level distinction when it stated that the exception covers " '[n]ot only agencies of the government ... but all employees exercising discretion ...' " and that "the challenged acts of a Government employee— whatever his or her rank" are protected so long as they are the result of an exercise of discretion. *Varig*, 467 U.S. at 813, 104 S.Ct. at 2764 (quoting *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed.2d 1427 (1953)). Thus, even if the actions and inactions of FDIC alleged by the plaintiff in this case all took place at the operational level, they are still protected so long as they involved the exercise of discretion. This, as discussed above, they clearly did.

Furthermore, *Varig* is not distinguishable from the present case simply because, as the plaintiff argues, *"Varig Airlines* addresses regulation of minimum safety standards, whereas the case at bar entails ownership and management, not regulation, of the Sharpe loan." Plaintiff's Brief, p. 4. On the contrary, the Tenth Circuit has explicitly declared that the application of the discretionary function exception is not limited to regulatory activities. *Barnson*, 816 F.2d at 552 (citing *Varig* ).

An alternative ground for dismissing the conversion claim of the complaint rests on the fact that a conversion, under Colorado law, is "defined as any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Glenn Arms Associates v. Century Mortgage & Investment Corp.*, 680 P.2d 1315 (Colo.App.1984). The plaintiff, in claim four of the complaint,

alleges that "F.D.I.C. ... failed to render an accounting of the security of the note ... and failed to render a statement indicating what servicing had been done ... F.D.I.C. also failed to respond to Plaintiff's request that it foreclose on the security." The Plaintiff claims that these actions "seriously interfered with Plaintiff's right to collect under its participation agreement." Complaint, Claim 4, ¶ 2.

None of the acts alleged constitutes an unauthorized act of dominion or ownership over any personal property of the plaintiff. The loan itself remained in the control of the Bank of Springfield, and, by the terms of the participation agreement, it and only it had authority to conduct and control the collection and enforcement of the loan. The only right the plaintiff had under the loan was the right to receive whatever money was collected. Since the plaintiff does not allege that any money was collected and not turned over, it had no personal property associated with the loan over which the defendants could have exercised unauthorized dominion or ownership.

Upon the foregoing, it is

ORDERED, that the defendants' motion for summary judgment is granted and this civil action is dismissed, with prejudice, and with costs for the defendants.